585 P.2d 949

The LOMAS & NETTLETON COMPA-
NY, a Connecticut Corporation,
Plaintiff-Respondent,

v.

TIGER ENTERPRISES, INC., an Idaho
Corporation, Lily E. Hedlund and Thom-
as K. Pope, Defendants-Appellants,

and

Jay Mount and Eva Mae Mount,
husband and wife,
Intervenors-Appellants.

Nos. 12288 & 12298.

Supreme Court of Idaho.

Oct. 13, 1978.

Everett D. Hofmeister, Coeur d'Alene,
for defendants-appellants.

Charles Van Marter and Roger K. Ander-
son of Lukins, Annis, Bastine, McKay &
Van Marter, Spokane, Wash., James E.
Hunt of Greene & Hunt, Sandpoint, for
plaintiff-respondent.

McFADDEN, Justice.

This is a consolidated appeal from two
cases, numbers 12298 and 12288, involving
the financial collapse of Whiskeyjack, a con-
dominium development on Lake Pend Or-
eille in northern Idaho.  Plaintiff-respon-
dent Lomas & Nettleton Company original-
ly filed this action against defendants-ap-
pellants Tiger Enterprises, Inc., and its or-
ganizers, defendants-appellants Thomas K.
Pope and Lily E. Hedlund, to foreclose a
mortgage on several lots in the develop-
ment.  Intervenors-appellants Jay and Eva
Mae Mount intervened, alleging that they
held a prior mortgage that had not been
validly released.  Defendants-appellants Ti-
ger Enterprises, Inc., Pope and Hedlund
then counterclaimed for damages, alleging
fraud and misrepresentation by plaintiff-re-
spondent in the transactions leading to the
mortgage.  The trial court granted summa-
ry judgment against intervenors-appellants,
finding that their prior mortgage had been
released.  From that judgment intervenors-
appellants appeal in case number 12298.
The trial court also granted summary judg-
ment against defendants-appellants on the
mortgage foreclosure claim and dismissed
defendants-appellants' counterclaim with

prejudice under I.R.C.P. 41(b).[1] Defendants-appellants appeal the dismissal of their counterclaim in case number 12288.

In case number 12298, intervenors-appellants Jay and Eva Mae Mount have neither filed a brief nor presented any oral argument. Although their case arises from the same factual circumstances as its companion case, the legal issues are altogether different and have not been addressed. Under the circumstances, this court deems the appeal to have been abandoned. *Moscow Hotel Co. v. Employment Security Agency,* 74 Idaho 162, 258 P.2d 1160 (1953).

Idaho Appellate Rule 21 provides in part:
Failure of a party to timely take any . . . step in the appellate process [other than filing a notice of appeal, or cross-appeal or a petition for rehearing] shall not be deemed jurisdictional, but may be grounds only for such action or sanction as the Supreme Court deems appropriate, which may include dismissal of the appeal.

Under I.A.R. 21 this court finds it appropriate and hereby orders that the appeal be dismissed.[2]

In case number 12288, defendants-appellants appeal from the dismissal of their counterclaim against plaintiff-respondent Lomas & Nettleton Company pursuant to I.R.C.P. 41(b). The judgment is affirmed.

Defendant-appellant Tiger Enterprises, Inc., was organized principally by defendants-appellants Lily Hedlund and Thomas K. Pope for the purpose of developing a condominium community called "Whiskeyjack" on a ninety acre site along Lake Pend Oreille. Financing for the project was arranged through plaintiff-respondent Lomas & Nettleton Company, a loan broker. Appellants sought a "package" loan arrangement consisting of three kinds of financing: (1) acquisition and development loans to complete streets, sewers, lighting and other central improvements; (2) interim construction loans to finance construction of the individual condominiums; and (3) "take-out" loans to the individual purchasers of the condominiums. These take-out loans would then be used to repay the interim construction loan on the particular condominium and a portion of the acquisition and development loans. The first of a series of acquisition and development loans was made by a Washington state bank through respondent in early 1972. Other such loans and interim construction loans followed.

The record indicates that by late 1972, the Whiskeyjack development's financial condition was precarious, apparently due to appellants' inability to secure continuing interim and take-out loans for the project, which appellants claim respondent was obliged to obtain for them. By the end of 1972, construction had ceased, the sales staff had been laid off and some salesmen commissions were unpaid. Several earnest money payments made by prospective condominium purchasers had to be refunded because of the seller's inability to arrange financing for the prospective purchasers.

By January, 1973, appellants were seeking financing elsewhere and had secured a commitment from a Montana lender for additional loans. Appellants, being unable to pay the forward loan fees[3] to the Montana lender, sought a $36,900 loan from

1. I.R.C.P. 41(b) provides in pertinent part:
   After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

2. *See* former I.A.R. 43, which provided:
   Failure of Appearance.—When a cause has been reached on the calendar and the appellant has not submitted a brief or assignments of error and is not represented by counsel in court, the appeal will ordinarily be dismissed; provided, the Court may in its discretion examine the record and render judgment on the merits.

3. Here the "forward loan fee" was the amount charged by the prospective lender and payable in advance for the cost of processing the loan application.

respondent in order to pay these fees and other expenses of closing the loan. On January 18, 1973, appellants Hedlund and Pope met with a representative of respondent and a Washington state bank in Seattle, Washington. Respondent agreed to provide the needed funds and presented appellants with a loan agreement containing the following:

> In consideration of this commitment and the making of the loan provided for herein, you and each of you jointly and severally do hereby forever release and discharge the Company, its officers, agents and employees from any and all claims of any nature whatsoever which you or any of you may have or claim to have on account of past dealings with the Company, the existence of which are expressly denied by the Company. In further consideration of this commitment and the making of the loan provided for herein and as an express condition thereto, you and each of you jointly and severally release the Company from any and all obligations claimed to exist by you to making or providing any further loans or loan commitments of any nature whatsoever to you or to any purchaser from you on account of any property developed by you within the Whiskey Jack Development.

> .    .    .    . .    .

> The foregoing loan commitment, including a general release of all claims against The Lomas & Nettleton Company has been read and understood and approved and we accept said loan commitment and make such general release on the terms and conditions to this loan commitment which have been expressly set forth therein and this agreement contains the entire agreement between the parties.

Although they objected to these provisions, both Pope and Hedlund executed the agreement for themselves individually and on

behalf of Tiger Enterprises. Several months later appellants signed a promissory note on behalf of the corporation and, for themselves and Tiger Enterprises, gave respondent a mortgage on several lots in the Whiskeyjack development. With the borrowed funds appellants obtained the anticipated financing from the Montana lender. Nevertheless, the financing was insufficient to prevent the venture's eventual financial collapse.

On October 30, 1973, respondent commenced foreclosure of the note and mortgage given for the January 18, 1973 loan. Appellants counterclaimed for two and one-half million dollars in damages, alleging that respondent had fraudulently misrepresented that it would provide full financing for the project, that appellants had relied upon such representations, and that respondent had refused to provide the financing. Appellants alleged that as a direct result, the Whiskeyjack project had failed, placing in jeopardy the security appellant Hedlund had pledged for earlier loans.

On November 21, 1975, summary judgment was entered against appellants on the note and mortgage foreclosure claim. At the March 29, 1976, trial on appellants' counterclaim, the written loan agreement of January 18, 1973, was placed into evidence. Claiming that as a matter of law [4] appellants had relinquished any claim for relief by the release provision of the loan agreement, respondent moved to dismiss the action with prejudice under I.R.C.P. 41(b).

Following this motion to dismiss the court allowed appellants to reopen their case in order to present any further evidence showing the invalidity of the release. On reopening, only appellant Pope testified and no documentary evidence was offered. In his testimony Pope indicated that appellants had delayed seeking financing from other sources because they believed respon-

---

4. Although the circumstances surrounding the execution of the loan agreement, promissory note and mortgage suggest that Washington state law might govern appellants' counterclaim, none of the parties raised this issue in the trial court or before this court. In the absence of a request to take judicial notice of

another state's statutory law, *White v. White,* 94 Idaho 26, 480 P.2d 872 (1971), or pleading and proof of the applicable non-statutory law, *Barthel v. Johnston,* 92 Idaho 94, 437 P.2d 366 (1968); *Reynolds v. Continental Mortgage Co.,* 85 Idaho 172, 377 P.2d 134 (1962), local law will be applied.

dent's written permission was required before they could negotiate with other lenders. Pope testified that appellants were without funds when the release was executed and that, without the January 18, 1973 loan, appellants could not have paid the fees necessary to secure other loan commitments. Appellant Pope further stated that he read and understood the import of the release. According to Pope's testimony, when he objected to the release and called it "financial blackmail," he was told to "take it or leave it."

At the conclusion of this testimony the court granted respondent's motion to dismiss, later entering a memorandum opinion incorporating findings of fact and conclusions of law (pursuant to I.R.C.P. 52(a)) that stated that appellants "have the burden of proving reasons for setting aside the release by clear and convincing evidence, and they have failed in this regard." On appeal, the only issue is whether the trial court, after "accept[ing] as true the positive, uncontradicted testimony of . . . credible witness[es]," *Russ v. Brown,* 96 Idaho 369, 373, 529 P.2d 765, 769 (1974), was clearly erroneous in ruling that appellants had failed to carry their burden of proof. I.R.C.P. 52(a).

■ A release is a type of contract, *Little Rock Packing Co. v. Massachusetts Bonding & Insurance Co.,* 262 F.2d 327 (8th Cir. 1959); *Sears, Sucsy & Co. v. Insurance Co. of North America,* 392 F.Supp. 398 (N.D.Ill. 1974); *Westfall v. Motors Ins. Co.,* 140 Mont. 564, 374 P.2d 96 (1962); 15 S. Williston, the Law of Contracts § 1820 (3d ed. Jaeger 1972), in which one party makes a "complete abandonment of [a] cause of action." *Holve v. Draper,* 95 Idaho 193, 195, 505 P.2d 1265, 1267 (1973). Because "[t]here is an obvious public policy favoring the amicable settlement of litigation, . . . agreements accomplishing this result will be disregarded only for the strongest of reasons." *Cities Service Oil Co. v. Coleman Oil Co.,* 470 F.2d 925, 929 (1st Cir. 1972). Furthermore, such reasons must be shown

by clear, satisfactory and convincing evidence. *Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747 (1966).

■ The issue of what must be shown to establish "business compulsion" or "economic duress" as a defense to a release is one of first impression in Idaho.[5] The general characteristics of business compulsion have been succinctly stated in *W. R. Grimshaw Co. v. Nevil C. Withrow Co.,* 248 F.2d 896, 904 (8th Cir. 1957):

> An examination of the cases in the field of duress and economic coercion makes it clear that three elements are common to all situations where actionable duress has been determined to exist: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. *United States v. Bethlehem Steel Corp.,* 315 U.S. 289, 301, 62 S.Ct. 581, 86 L.Ed. 855, and cf., *Furman v. Gulf Insurance Company,* 8 Cir., 152 F.2d 891, supra; *Bennett v. Mahon,* 8 Cir., 180 F.2d 224, supra; *Winget v. Rockwood,* 8 Cir., 69 F.2d 326, supra.
>
> In order to substantiate the allegation of economic duress or business compulsion, the plaintiff must go beyond the mere showing of a reluctance to accept and of financial embarrassment. There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities.

This statement of the law has been widely adopted and applied. *Jamestown Farmers Elevator, Inc. v. General Mills, Inc.,* 552 F.2d 1285 (8th Cir. 1977) (applying North Dakota law); *Oskey Gasoline & Oil Co. v. Continental Oil,* 534 F.2d 1281 (8th Cir. 1976) (applying Minnesota law); *Schott Enterprises, Inc. v. Pepsico, Inc.,* 520 F.2d 1298 (6th Cir. 1975); *Cities Service Oil Co. v.*

---

**5.** This action does not involve the policy considerations of a release for personal injuries. See *Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747.

*Coleman Oil Co.,* 470 F.2d 925 (1st Cir. 1972); *Undersea Engineering & Construction Co. v. International Telephone & Telegraph Corp.,* 429 F.2d 543 (9th Cir. 1970) (per curiam); *Fabert Motors, Inc. v. Ford Motor Co.,* 355 F.2d 888 (7th Cir. 1966), *cert. denied* 384 U.S. 939, 86 S.Ct. 1462, 16 L.Ed.2d 539 (1966); *Plechner v. Widener College, Inc.,* 418 F.Supp. 1282 (E.D.Pa. 1976); *Friedman v. Bache & Co.,* 321 F.Supp. 347 (S.D.Fla.1970); *A & G Const. Co. v. Reid Bros. Logging Co.,* 547 P.2d 1207 (Alaska 1976); *Shillman v. Hobstetter,* 249 Md. 678, 241 A.2d 570 (1968); *Puget Sound Power & Light Co. v. Shulman,* 84 Wash.2d 433, 526 P.2d 1210 (1974).

Although this court has not previously discussed what must be shown to establish "business compulsion" or "economic duress" as a defense to a release, it considered a comparable issue in *Inland Empire Refineries, Inc. v. Jones,* 69 Idaho 335, 206 P.2d 519 (1949). In the *Inland Empire* case duress from business compulsion was found by a jury and accepted as a defense to an action on a promissory note. In affirming the trial court this court stated in discussing the defense of duress:

> Business compulsion is not established merely by proof that consent is secured by pressure of financial circumstances; or that one party insisted upon a legal right and the other party yielded to such insistence. Neither will a mere threat to withhold from a party a legal right which he has an adequate remedy to enforce, constitute duress. Generally, the demand by one party must be wrongful or unlawful, and the other party must have no other means of immediate relief from the actual or threatened duress than by compliance with the demand. [citations omitted.]

*Id.* at 339, 206 P.2d at 522.

After examining the record in this case, it is our conclusion that the trial court's ruling that appellants failed to carry their burden of proof is not "clearly erroneous." Rule 52(a). On the basis of the trial record the court below could properly conclude that appellants did not present clear and convincing evidence that their financial embarrassment was due to wrongful conduct by respondent or that they lacked an alternative to signing respondent's loan agreement. The record fails to establish that the duress under which appellants claimed to be operating arose from any "wrongful and oppressive conduct" by respondents. *W. R. Grimshaw Co. v. Nevil C. Withrow Co., supra.* The record shows that appellants did not demonstrate that respondent was contractually bound to provide all necessary loans or that it had fraudulently misrepresented that it would do so. Unless respondent had some legal obligation to provide the loans, it had a legal right to withhold them. Respondent's exercise of a legal right is not conduct amounting to business compulsion, *Inland Empire Refineries, supra.* The record also shows that appellants did not demonstrate that they were bound to seek financing only from respondent and therefore had no alternative to signing the release.

Finding no error in the trial court's ruling that appellants failed to carry their burden of proof, the judgment is affirmed. Costs to respondent.

SHEPARD, C. J., and DONALDSON, BAKES and BISTLINE, JJ., concur.