697 P.2d 1146

CLEARWATER CONSTRUCTION & EN-
GINEERING, INC., Plaintiff-Counter-
defendant,     Appellant-Cross-Respon-
dent,

v.

WICKES FOREST INDUSTRIES, A DI-
VISION OF THE WICKES CORPORA-
TION,     Defendant-Counterclaimant,
Cross-Appellant,

and

WICKES FOREST INDUSTRIES, A DI-
VISION OF THE WICKES CORPORA-
TION, Third-Party Plaintiff, Counter-
defendant-Respondent,     Cross-Appel-
lant,

v.

AMERICAN FIDELITY FIRE INSUR-
ANCE COMPANY, a New York corpo-
ration, Third-Party Defendant, Coun-
terclaimant-Cross-Respondent.

No. 14169.

Supreme Court of Idaho.

Jan. 23, 1985.

Paul Thomas Clark, of Clark and Feeney,
Lewiston, and Robert G. Taylor, and Mary
E. O'Brien, of Taylor & Bryan, Seattle,
Wash., for appellant and cross-respondent,
Clearwater Const. & Engineering, Inc.

R.B. Kading, Jr., James R. Gillespie, and
T.A. Banducci, and Mary S. Hobson, of
Eberle, Berlin, Kading, Turnbow & Gilles-

pie, Chartered, Boise, for respondent and cross-appellant, Wickes Forest Industries.

Michael E. McNichols, Lewiston, for cross-respondent, American Fidelity Fire Ins. Co.

DONALDSON, Chief Justice.

On August 20, 1975, Clearwater Construction & Engineering, Inc., (Clearwater) and Wickes Forest Industries (Wickes) entered into a road construction contract for the construction of two Forest Service roads. The roads were identified as road # 221.3 (Grangeville-Salmon Road) and road # 2202 (Van Buren Road). The entire undertaking is referred to by the parties as the "Van Buren Project." The contract ran until December 31, 1976. It provided for bi-monthly progress payments to Clearwater less a 10% retainage as security for performance.

Clearwater began work in September of 1975. By the end of the 1975 season, Clearwater's operation had become "log bound." This meant that Clearwater could not efficiently continue its road construction because log decks on the right-of-way impeded further excavation and culvert work.

When Clearwater began work in September, 1976, very few logs had been removed. Road excavation proceeded with Clearwater moving the logs back and forth across the right-of-way whenever they blocked construction. The project was not completed by the December 31, 1976, termination date.

On February 1, 1977, the parties executed a second contract which purported to cancel the earlier contract. The contract extended the completion date on the Van Buren Project until December 31, 1977. It also added a six-mile "spur road" to the construction requirements. In addition, it required that Clearwater execute a $160,-000.00 performance bond and provided for liquidated damages at a rate of $200 per day for each day of work past the new 1977 completion date. The liquidated damage provision excepted Clearwater from liability where delays resulted from Wickes' failure to remove right-of-way logs.

The work under the new contract was to be completed for the remainder of the progress payments owed under the 1975 contract, and an additional $51,000.00 for construction of the spur road. After Clearwater obtained the required performance bond, Wickes released the retainage earned through the 1976 season. Clearwater began work under the new contract on June 20, 1977. Clearwater again experienced difficulties completing the project. Clearwater attributes those difficulties primarily to Wickes' failure to remove the right-of-way logs. Wickes, on the other hand, cites a number of contributing factors, including: poor weather conditions, inefficient manpower, and equipment breakdowns. Relations between the parties deteriorated and, in letters dated September 30, 1977, each party notified the other that it was claiming default under the February 1, 1977 contract. At that time $63,000.00 of the contract price remained unpaid. Wickes had the project completed by another contractor at a cost of approximately $71,000.00.

On May 22, 1978, Clearwater filed suit for damages arising out of the alleged breach of contract by Wickes. American Fidelity Fire Insurance Company, surety for Clearwater, was joined as a third-party defendant. The case was tried to a jury and a verdict awarding Clearwater $398,-538.00 in direct contract damages and $238,215.00 in consequential damages was entered on October 16, 1980. The consequential damages included $118,541.00 for losses on other projects, $111,674.00 for losses on involuntary equipment liquidations and $8,000.00 for attorney fees owed to Valley Bank. Clearwater was also awarded attorney fees of $125,212.00 and costs of $4,102.97.

Wickes moved for a judgment notwithstanding the verdict. The court ruled that the evidence was insufficient to support the jury's award of consequential damages for losses on other projects and equipment li-

quidations and reduced the judgment by $230,215.00.

Clearwater moved for pre-judgment interest. The court entered an order allowing interest only from the date of the verdict, and specifically denying any pre-judgment interest.

Clearwater filed this appeal objecting to the trial court's decision reducing its consequential damage award and denying its motion for pre-judgment interest. Wickes cross-appealed asserting that the trial court erred (1) in submitting Clearwater's damage proof to the jury; (2) in allowing the jury to consider whether the 1977 contract was the product of unlawful duress; (3) in denying Wickes' motion for directed verdict on the issue of the cancellation of the 1975 contract; (4) in failing to grant a judgment notwithstanding the verdict on the $8,000.00 in attorney fees owed to Valley Bank; and (5) in awarding Clearwater attorney fees.

We hold that, because the trial judge improperly submitted the duress issue to the jury, the judgment must be reversed and this case remanded for a new trial.

At trial, Clearwater made alternative arguments with regard to the 1977 contract. Clearwater argued that the contract was either a valid and binding agreement which Wickes had breached or that it was invalid as the product of unlawful duress. Wickes contends that it was prejudicial error for the court to allow the jury to consider the duress question. It asserts that the evidence overwhelmingly demonstrated that the 1977 contract was validly negotiated and assented to, and that Clearwater treated the contract as a binding obligation on both parties. Wickes submits that the trial court's failure to grant a directed verdict on the issues of duress and ratification prejudiced Wickes on the merits of its argument that the 1977 contract, by its terms, canceled the 1975 contract. In addition, Wickes submits that the duress argument allowed Clearwater to obscure the true contractual relationship between the parties and to introduce testimony and argument which were irrelevant and prejudicial to Wickes.

The prerequisites for establishing the defense of "economic duress" or "business compulsion" were set out by this Court in *Lomas & Nettleton Co. v. Tiger Enterprises,* 99 Idaho 539, 585 P.2d 949 (1978). In that case, we stated that there are three elements common to all situations where economic duress has been found to exist: (1) that one side involuntarily accepted the terms of the other; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. *Lomas, supra,* at 542, 585 P.2d at 552. We further stated that in order to substantiate an allegation of economic duress, the plaintiff must show more than a reluctance to accept or financial embarrassment. "There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *Id.*

Clearwater contends that it presented evidence at trial establishing the three elements of economic duress. Clearwater asserts that Wickes' breaches of the 1975 contract placed Clearwater in a highly precarious financial position and that, as a result, Clearwater was forced to sign the 1977 contract, against its will, in an attempt to save itself from financial ruin. In response, Wickes argues that the evidence submitted by Clearwater in support of its defense of economic duress was insufficient as a matter of law. Wickes states that Clearwater had an adequate remedy at law for the alleged breach of the 1975 contract and, thus, that Clearwater had an alternative to entering into the 1977 contract. Wickes further states that the 1977 contract was negotiated by Clearwater and that Clearwater anticipated receiving benefits under the contract: namely, the release of the retainages and additional compensation for the construction of the spur road. Moreover, Wickes contends that, whether or not there was a jury question on the

issue of duress, the evidence establishes that Clearwater ratified the 1977 contract. Clearwater does not dispute Wickes' contention that the evidence supports a finding of ratification, but argues that the issue of ratification is a question of fact for the jury.

A contract entered into under duress is not void, but merely voidable, and may be ratified by subsequent acts of the party claiming duress. *Mountain Electric Company v. Swartz*, 87 Idaho 403, 411, 393 P.2d 724, 732 (1964). Ratification results where the party entering into the contract under duress intentionally accepts its benefits, remains silent, or acquiesces in it after an opportunity to avoid it, or recognizes its validity by acting upon it. *Id; see* Annot., 77 A.L.R.2d 426, 428 (1961) and cases cited therein. *See also* Restatement (Second) of Contracts §§ 380, 381 (1981).

The evidence conclusively establishes that Clearwater ratified the 1977 contract. After executing the contract, Clearwater moved onto the construction site and began work under the contract. When relations between the parties broke down in late 1977, Clearwater sent Wickes a letter stating that Wickes was in default under the terms of the 1977 agreement. Clearwater initiated this lawsuit in May of 1978 alleging breach of both the 1975 and the 1977 contracts. It was not until June 1980, more than three years after execution, that Clearwater first contended that the 1977 contract was invalid as the product of unlawful duress. Clearwater has offered no evidence or argument to show that it did not ratify the 1977 contract. In fact, Clearwater admits in its brief that the evidence supports a finding that the contract was ratified. Nevertheless, Clearwater insists that the issue of ratification was an issue of fact for the jury.

In view of the uncontradicted record, it was error for the trial court to submit the duress issue to the jury. While we recognize that the issue of ratification is normally a question of fact for the jury, *Mountain Electric Company v. Swartz*, 87 Idaho 403, 393 P.2d 724, where the evidence is uncontradicted, ratification should be determined by the court as a matter of law. *Diffenderfer v. Heublein, Inc.*, 412 F.2d 184 (8th Cir.1969); *Audit Services, Inc. v. Francis Tindall Const.*, 183 Mont. 474, 600 P.2d 811 (1979).

The trial court's refusal to direct a verdict on the issue of ratification, prejudiced Wickes in several ways: First, it allowed Clearwater to sidestep Wickes' argument that Clearwater could not recover damages under the 1975 contract because the 1977 contract, by its terms, canceled the 1975 contract. A large portion of the damages awarded at trial were based on cost overruns under the 1975 contract. Second, it created an opportunity for Clearwater to submit prejudicial testimony and argument. For example, Clearwater principals testified that they were faced with a choice of signing the 1977 contract or going broke.

"It was either sign this contract and go back and try to salvage something or roll over and play dead, just give up completely."

"I mean we were drove up against the wall. We had worked five—seven years of our lives building a company out of absolutely nothing and we got into a situation that we are—reputation and our money are—everything we had worked for all our lives is going down the tube unless we sign this contract."

This line of argument was inappropriate in light of the fact that the evidence demonstrated that Clearwater had ratified the 1977 contract. Finally, the duress argument was submitted to the jury without adequate instructions. The instructions set out the elements of duress but did not adequately inform the jury of the consequences of finding duress. The instructions stated that if the jury found that the 1977 contract was the product of unlawful duress, there was no novation of Clearwater's claims under the 1975 contract. However, they did not inform the jury that if they found the 1977 contract was executed under duress, Clearwater's damages

were limited to recovery in quantum meru-it. Restatement (Second) of Contracts § 376. Clearwater sought both direct and consequential damages under the 1977 contract. The jury was not informed that those damages were precluded if they found duress.

In summation, we conclude that, under the facts of this case, the trial court committed reversible error when it denied Wickes' motion for directed verdict on the issue of ratification. Submission of the duress and ratification issues to the jury was clearly prejudicial to Wickes.

■ In light of our decision to reverse and remand this case for a new trial, it is unnecessary for us to address the rest of the parties' arguments. We do note, however, that Wickes argues that Clearwater used the "total cost" approach to prove its damages at trial. While we do not reach the merits of this argument, for purposes of the new trial we note that the total cost approach to calculation of construction damages is not favored by the courts and would not constitute adequate proof of damages in this case. For a discussion of the total cost approach, *see Boyajian v. United States*, 423 F.2d 1231, 191 Ct.Cl. 233 (1970).

The decision of the trial court is reversed and this case is remanded for a new trial in accordance with the views expressed herein.

No costs or attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in result.