52 P.3d 307

**PRIMARY HEALTH NETWORK, INC., Plaintiff–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF ADMINISTRATION, and Cynthia C. Dickinson, Defendants–Respondents.**

No. 27406.

Supreme Court of Idaho,
Boise, March 2002 Term.

June 7, 2002.

Rehearing Denied Aug. 22, 2002.

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Hon. Alan G. Lance, Attorney General; Jed W. Manwaring, Special Deputy Attorney General, Boise, for respondent. Jed W. Manwaring argued.

WALTERS, Justice.

Primary Health Network, Inc. (Primary Health) appeals from the judgment of the district court denying Primary Health's claim to recover from the State of Idaho insurance benefits paid on behalf of its insured, an employee of the State, whose eligibility for coverage under a contract provided to state employees was contested by Primary Health. This Court affirms the judgment.

## FACTS AND PROCEDURAL BACKGROUND

The State of Idaho Department of Administration contracted with Primary Health to become a provider of group health insurance policies for state employees.[1] The provisions of the contract were spelled out in the State's request for proposals (RFP) and the response to the RFP by Primary Health. Pursuant to the contract, state employees were notified of open enrollment that was to begin April 21, 1997, and continue for a period of thirty days. Eligible employees, as defined in Section EE I.A. of the contract, were permitted to enroll in any available insurance plan without being subject to exclusion for pre-existing medical problems.

The controversy surrounding this case centered on the State's acceptance of the late enrollment of Penney Huffman, a state employee, which was dated June 27, 1997, well beyond the closing date of the enrollment period. The enrollment and a letter from Cynthia Dickinson of the Department of Administration was forwarded to Primary Health, which subsequently learned that the State had accepted the late enrollment of Ms. Huffman because she was not at work and failed to receive notice of her open enrollment options during the enrollment period. Primary Health made further inquiries at that time into the State's policy with respect

to late enrollment and obtained advice from legal counsel regarding its rights under the contract, recognizing that Penney Huffman was the mother of a seriously ill child, Julieanne Prudhomme—a catastrophic loss case.

Two years after paying out approximately one million dollars to third-party medical providers on behalf of its insured, Primary Health brought this action seeking to obtain from the State information to substantiate the eligibility of Penney Huffman for group health insurance. The State complied with the court's order to provide the requested records. Then, on March 21, 2000, Primary Health amended its complaint to allege damages for breach of contract, mistake/reformation, business compulsion, violation of 42 U.S.C. § 1983 and negligence. On December 6, 2000, the district court granted summary judgment in favor of the State on all counts. The district court later entered its judgment and order granting attorney fees to the State. The district court denied Primary Health's request for reconsideration, and Primary Health instituted this appeal.

## ISSUES ON APPEAL

1. Did the district court err in awarding summary judgment on Primary Health's contract claim based on a lack of any genuine issue of material fact?

2. Did the district court err in awarding judgment on the claim of business compulsion based on a lack of any genuine issue of material fact?

3. Did the district court err as a matter of law by concluding that ratification or waiver precluded Primary Health from pursuing its claim of business compulsion?

4. Did the district court err in awarding judgment on Primary Health's constitutional claims?

5. Did the district court err in awarding judgment on the claim of negligent performance of statutory and contractual obligations by the State?

1. The Point of Service Group Insurance Contract with Primary Health was dated July 1, 1997.

6. Was the award of attorney fees to the State in error?

7. Are the Respondents entitled to an award of attorney fees on appeal?

## STANDARD OF REVIEW

 Summary judgment should be granted if no genuine issue as to any material fact is found to exist after the pleadings, depositions, admissions, and affidavits have been construed in a light most favorable to the party opposing summary judgment. *Farmer's Ins. Co. v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); I.R.C.P. 56(c). The party responding to a summary judgment motion is not required to present evidence on every element of his or her case at that time, but, rather, must establish a genuine issue of material fact regarding the element or elements challenged by the moving party. *Thompson v. City of Idaho Falls,* 126 Idaho 587, 887 P.2d 1094 (Ct.App.1994). Summary judgment dismissal of a claim is appropriate when the plaintiff fails to submit evidence to establish an essential element of the claim. *Nelson ex rel. Nelson v. City of Rupert,* 128 Idaho 199, 911 P.2d 1111 (1996).

## ANALYSIS

### I.

### Breach of Contract Claim

 Primary Health claimed that the State breached the parties' contract by wrongly asserting a right to make exceptions to the open enrollment policy. The district court determined at the summary judgment hearing that Primary Health knew at the time it accepted Ms. Huffman as an enrollee that it did not have the legal obligation to do so. The contract provided for a defined and limited open enrollment period, and Ms. Huffman's enrollment was not made within that time period. The evidence before the district court included the affidavit of Mr. Einboden of Primary Health detailing how he questioned the State's action in allowing the late enrollment of Ms. Huffman, which was outside of the open enrollment period, and that he had asked the State to specify its basis for allowing the enrollment of Ms.

Huffman. In his deposition presented to the district court, Einboden admitted that Primary Health did not have to accept Ms. Huffman's enrollment. The district court also had before it a letter from Steven Lord, counsel for Primary Health, dated July 2, 1997, which informed the company that Primary Health's contract with the State contained no provision for the State to extend the open enrollment period set forth in the contract or for acceptance of late enrollees under special circumstances. As to the conflicting testimony of Einboden and Dickinson as to whether Dickinson ever made the statement, "if the contract doesn't provide for late enrollment, I'll change it," the district court determined that this issue was not material to the resolution of the defendant's motion for summary judgment on the breach of contract claim. Based on this evidence, the district court concluded that even if the State's representative, Cynthia Dickinson, wrongly represented that the State had the right to make exceptions to the open enrollment policy, Primary Health cannot recover under a breach of contract theory because its claimed damages were the result of its own independent decision to accept Ms. Huffman's enrollment contrary to the contract provisions on open enrollment.

 As argued by the State on appeal, I.C. § 41–2221(d) provides:

> A health benefit plan may exclude coverage for late enrollees for the greater of twelve (12) months or for a twelve (12) month preexisting condition exclusion; provided that if both a period of exclusion from coverage and a preexisting condition exclusion are applicable to a later enrollee, the combined period shall not exceed twelve (12) months from the date the individual enrolls for coverage under the health benefit plan.

Existing law becomes part of a contract, just as though the contract contains an express provision to that effect, unless a contrary intent is disclosed. *Robinson v. Joint School Dist. No. 150,* 100 Idaho 263, 596 P.2d 436 (1979). Therefore, as a matter of law, Primary Health has failed to assert a viable breach of contract claim.

Primary Health also claimed that the State breached the parties' contract by demanding the enrollment of an ineligible person. Primary Health asserted that Ms. Huffman was not an eligible person because she had not worked the specified number of hours required under the definition contained in the contract. Primary Health asserted that the relevant time period for the evaluation of eligibility was the defined open enrollment period, which in this case was between April 21, 1997, and May 16, 1997.

Section EE IV.D. of the contract provides: "For a person who is an Eligible Person on the Group's Contract Date and applies for Coverage on or before that date, the Effective Date is the Group's Contract Date." The contract date in this case was July 1, 1997. The evidence showed that on that date, Ms. Huffman was "working twenty hours or more per week or eighty-four hours or more per month" and her term of employment was "expected to exceed five months in any consecutive twelve month period." The district court correctly found that Primary Health presented no facts to contradict the employment records supplied in support of the eligibility determination in Ms. Huffman's case. Accordingly, the dismissal of the claim on this basis was proper.

Primary Health further claims that the State breached the parties' contract by depriving Primary Health of the risk limitation it had bargained for. As noted earlier, the contract provided for a thirty-day open enrollment period. The district court determined that Primary Health knew that the contract did not require it to accept individuals who failed to apply within the open enrollment period. The district court found that, although the State allowed the late enrollment of Ms. Huffman, Primary Health was the cause of its subsequent losses tied to the payment of insurance benefits on behalf of Ms. Huffman by its acceptance of her as a plan member.

Primary Health asserts that the State compelled its acceptance of Ms. Huffman into the plan. This assertion was based on statements purportedly made by Cynthia Dickinson about a "policy" which allowed the State to accept late enrollees under certain circum-

stances. According to Cindy Garcia, a former employee who handled eligibility issues of enrollees, the only method for a late enrollee to be admitted to the plan was "to apply and qualify for membership by completing a health statement application, which meets the Plan's underwriting criteria and is accepted by the Plan." Primary Health did not supply facts or point to a provision in the contract that required it to accept a late enrollee such as Ms. Huffman.

■ Primary Health asserted that the State breached not a specific provision of the contract but the covenant of good faith and fair dealing that is implied in every contract. *See Luzar v. Western Surety,* 107 Idaho 693, 696, 692 P.2d 337, 340 (1984). A violation of the covenant occurs when "either party violates, nullifies or significantly impairs any benefit of the contract." *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 669, 799 P.2d 70, 75 (1990). Primary Health contended that, although it was not willing to extend coverage to Ms. Huffman, it had no right to contest the State's decision to allow Ms. Huffman to receive open enrollment status based on the "policy" expressed by Cynthia Dickinson. Primary Health asserted that it did not become aware of its true rights until after it accepted Ms. Huffman as a member. Primary Health's assertions that it was bound by the "policy" expressed by Cynthia Dickinson (which turned out not to exist) do not raise disputed issues of material fact. The belief of Primary Health that it was required to accept Ms. Huffman's late application was contrary to the terms of the written contract and forms no basis upon which to find a subsequent oral modification of the written contract. *See Clement v. Farmers Ins. Exchange,* 115 Idaho 298, 301, 766 P.2d 768, 771 (1988).

■ Primary Health asserts that its request to amend its complaint seeking rescission of the contract should have been granted by the district court. A decision to grant or deny an amendment is within the discretion of the district court. *Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co.,* 132 Idaho 318, 971 P.2d 1142 (1998).

■ Under Idaho law, mutual mistake permits a party to rescind or modify a contract as long as the mistake is so substantial and fundamental as to defeat the object of that party. *United States v. Fowler,* 913 F.2d 1382 (9th Cir.1990). Arguably, the "policy" enunciated by Cynthia Dickinson, whereby the State could except the open enrollment limitations and allow open enrollment benefits to late enrollees was a mutual mistake. However, the district court found that Primary Health "had not shown that it was mistaken about whether an open enrollee [sic] was allowed." Primary Health's argument that the contract itself allows for rescission is misplaced as the pertinent contract provision relates to rescission of a member's coverage for misrepresentation concerning or on behalf of any member that would have been material to Primary Health's acceptance of the risk. The relief that Primary Health is seeking is rescission of its contract with the State.

■ Rescission is an equitable remedy that totally abrogates the contract and seeks to restore the parties to their original positions. It is normally granted only in those circumstances in which one of the parties has committed a breach so material that it destroys or vitiates the entire purpose for entering into the contract. *Blinzler v. Andrews,* 94 Idaho 215, 485 P.2d 957 (1971). The district court acted within the bounds of its discretion in denying Primary Health's motion to amend the complaint.

## II.

### Business Compulsion/Duress

■ A party claiming economic duress must prove that it involuntarily accepted the terms offered by the other party, that the circumstances permitted no other alternative, and that the circumstances were the result of coercive acts of the other party. *Isaak v. Idaho First Nat'l Bank,* 119 Idaho 988, 989, 812 P.2d 295, 296 (Ct.App.1990), *citing Lomas & Nettleton Co. v. Tiger Enter-*

*prises,* 99 Idaho 539, 585 P.2d 949 (1978). The assertion of duress must be proven by evidence that the duress resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities. *Lomas,* 99 Idaho at 542, 585 P.2d at 952.

■ The offending conduct cited by Primary Health was Cynthia Dickinson's insistence that Ms. Huffman be accepted into the plan despite her late enrollment. According to Primary Health, it faced a Hobson's choice of either accepting Ms. Huffman's late enrollment, which all parties recognized was a catastrophic case that would cause severe hardship, or jeopardize the entire contract with the State, which Primary Health deemed it was ill equipped financially to endure. "Mere financial embarrassment or reluctance to accept the offered terms do [sic] not constitute economic duress." *Isaak, supra,* 119 Idaho at 988, 812 P.2d at 295, *citing Lomas, supra.* Furthermore, we have held that a mere threat to withhold from a party a legal right which he has an adequate remedy to enforce will not constitute duress. *Inland Empire Refineries, Inc. v. Jones,* 69 Idaho 335, 339, 206 P.2d 519, 522 (1949). Such was the case here, in which the evidence established that Primary Health had a letter from its counsel advising that it was under no obligation to extend open enrollment or to accept Ms. Huffman as a member.[2] The record shows that Primary Health did not demonstrate that it had no alternative to accepting Ms. Huffman. The district court correctly held that a claim of duress had not been made.

## III.

### Ratification and Waiver

■ Primary Health contends that the district court was not authorized to conclude that Primary Health had ratified the contract entered into under duress because ratification was not raised as an affirmative defense by the State. The district court's conclusion

---

2. Primary Health argues that attorney Lord's letter merely advised that the RFP documents did not provide a basis for the State to extend or waive the open enrollment period. The General Provisions of the contract, specifically GP I.,

contain an integration clause which expressly states that "the Agreement supersedes all prior and contemporaneous arrangements, understanding, negotiations and discussion."

that Primary Health had ratified the contract led to the dismissal of the claim for duress.

 The purpose of the rule (I.R.C.P.8(c)) requiring affirmative defenses to be pleaded is to alert the parties concerning the issues of fact to be tried and to afford them an opportunity to meet those defenses. *Williams v. Paxton,* 98 Idaho 155, 559 P.2d 1123 (1976). The district court properly recognized that, although the issue of ratification is normally a question for the jury, *see Clearwater Constr. v. Wickes Forest Industries,* 108 Idaho 132, 697 P.2d 1146 (1985), where the evidence is uncontradicted, ratification should be determined by the court as a matter of law. *Id.* In this case, there was uncontradicted evidence that Primary Health accepted Ms. Huffman as a member despite her late enrollment, received premiums, and paid claims on her behalf until the expiration of the contract year, only after which it asserted economic duress.

 "An insurer cannot be deemed to have waived a right based upon material facts, the existence of which were unknown to it." *Wells v. United States Life Ins. Co.,* 119 Idaho 160–164, 804 P.2d 333, 337 (Ct. App.1991). Waiver is a question of intent involving a mixed question of law and fact. *Seaport Citizens Bank v. Dippel,* 112 Idaho 736, 739, 735 P.2d 1047 (Ct.App.1987). The evidence, including the letter from counsel, demonstrated that Primary Health was aware that it was not contractually bound to accept Ms. Huffman as a late enrollee. Its subsequent actions in extending open enrollment benefits to Ms. Huffman based on representations by Cynthia Dickinson of an unwritten policy that allowed for late enrollment under certain circumstances, without a reservation of rights, is tantamount to a waiver.

## IV.

### 42 U.S.C. § 1983 Claim

Primary Health claims that Cynthia Dickinson's actions violated Primary Health's civil rights by depriving it of property without due process in violation of 42 U.S.C. § 1983. A *prima facie* case under § 1983 requires a showing that the respondent was acting un-

der color of state law and that respondent's conduct deprived claimant of some right, privilege, or immunity protected by the constitutional laws of the United States. *Leer v. Murphy,* 844 F.2d 628 (9th Cir.1988); *Dana, Larson, Roubal and Associates v. Board of Comm'rs of Canyon County,* 124 Idaho 794, 798, 864 P.2d 632, 636 (Ct.App.1993). Only federally guaranteed rights, not state rights, are protected by § 1983. *Crooks v. Maynard,* 718 F.Supp. 1460, *aff'd* 913 F.2d 699 (D.Idaho 1990).

 Primary Health argues that parties to a contract have a property interest in the subject matter of the contract that is protectable both under the Contract Clause and the Due Process Clause of the United States Constitution. *Curr v. Curr,* 124 Idaho 686, 692, 864 P.2d 132, 138 (1993), *citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Application of Forde L. Johnson Oil Co.,* 84 Idaho 288, 372 P.2d 135 (1962). However, "federal constitutional law determines what interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *See Physicians' Services Medical Group v. San Bernadino County,* 825 F.2d 1404, 1409 (9th Cir.1987) (citations omitted). Federal law may differentiate between contractual rights. Thus, it must be determined what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment. *Id.* Contracts securing individual rights of employment are more appropriate for due process protection than a corporation's contract to supply the services of others, *id.* n. 4, and should be distinguished from an individual's contract to supply his or her own services. *Id.* n. 5. The district court in the present case correctly ruled that Primary Health had failed to identify a property right under the Constitution or federal statute.

Primary Health next argues that the district court misperceived its claim that it was denied equal protection rights. Primary Health asserts that it was treated differently from other health insurers under the State's health insurance program by being required by the State to accept a late enrollee.

Equal protection issues focus upon classifications within a statutory scheme that allocate benefits or burdens differently among categories of persons affected. *State Dep't of Health & Welfare ex rel. Martz v. Reid,* 124 Idaho 908, 865 P.2d 999 (Ct.App.1993). The equal protection clause of the Fourteenth Amendment is designed to ensure that those persons similarly situated with respect to a governmental action should be treated similarly. *State v. Hayes,* 108 Idaho 556, 700 P.2d 959 (Ct.App.1985). When reviewing the constitutionality of statutes impacting on social or economic areas, the rational basis test is generally appropriate. *Harris v. State, Dep't of Health & Welfare,* 123 Idaho 295, 847 P.2d 1156 (1992). Under the rational basis test, the equal protection clause is violated only if classification is based solely on reasons totally unrelated to the pursuit of the state's goals and only if no grounds can be advanced to justify those goals. *Idaho Schools for Equal Educational Opportunity v. Evans,* 123 Idaho 573, 850 P.2d 724 (1993). Primary Health, however, has not identified a statute for the Court to examine in order to determine whether the classification discriminates. Albeit on different grounds, the district court correctly held that Primary Health did not present a claim which would entitle it to relief.

## V.

### Negligent Performance of Statutory and Contractual Obligations

Primary Health asserted that the State was negligent in failing to dispatch enrollment information to its employees, namely Ms. Huffman, and in failing to timely respond to its request for eligibility information on Ms. Huffman. Relying on *Stott by and through Dougall v. Finney,* 130 Idaho 894, 950 P.2d 709 (1997), Primary Health asserts that the negligent performance of a contract or violation of a statute or regulation can provide grounds for a negligence claim. Initially, we note that *Stott* only recites the well established principles relating to negligence per se or negligence as a matter of law; it does not in any way touch on negligent performance of a contract.

The district court properly held that Primary Health did not cite to a statute that was violated. The duty of the State under the contract, to provide enrollment information to state employees, according to the evidence, was met. The evidence showed not that the State failed to dispatch the required information, but that Ms. Huffman was out of the state and did not receive the information so that she could elect an insurance company during the open enrollment period. With respect to the allegation that the State was negligent in supplying information of Ms. Huffman's hours worked in order to verify her eligibility, Primary Health did not show that Ms. Huffman was ineligible. Primary Health's claim of negligence was properly dismissed by the district court, particularly where Primary Health failed to establish any causal connection between any alleged negligent acts by the State and the damages it asserted.

## VI.

### Attorney Fees

The district court awarded attorney fees to the State pursuant to I.C. § 12–120(3) and determined I.C. § 41–1839(4) to be inapplicable to this case. Primary Health argues, as it did before the district court, that I.C. § 41–1839(4) is the exclusive attorney fee provision applicable in insurance disputes.

Idaho Code, Section 41–1839(4) provides:

Notwithstanding any other provision of statute to the contrary, this section and section 12–123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12–120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.

According to the district court's decision, Primary Health was the insurer, but the State

was not an insured under I.C. § 41–1839(4). The insured parties were the employees of the State, including Ms. Huffman, who received health insurance benefits under the plan. We agree and hold that I.C. § 41–1839(4) is inapplicable in the context of this case.

Idaho Code, Section 12–120(3) requires the gravamen of the lawsuit to be a commercial transaction. The district court correctly determined that each of the claims in the amended complaint arose from a commercial transaction, which was the purchase by the State of insurance benefits for state employees. The district court did not abuse its discretion in granting attorney fees based on I.C. § 12–120(3).

## VII.

### Attorney Fees on Appeal

The Respondents have requested attorney fees and costs on appeal pursuant to I.C. § 12–120(3). The Respondents are the prevailing parties on appeal and the statute, as found by the district court, is applicable to the transaction in this case. Therefore, both a reasonable amount for attorney fees and the Respondents' costs on appeal will be awarded in accordance with the provisions of I.A.R. 40 and 41.

## CONCLUSION

Primary Health failed to establish the existence of a genuine issue of fact on any of the theories asserted in order to avoid summary judgment. Therefore, the decision of the district court is affirmed. Costs and attorney fees on appeal are awarded to the Respondents.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.