## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 34527

AMBER MACKOWIAK, fka Amber Harris,   )
)      **Boise, December 2008 Term**
     **Plaintiff-Appellant,**   )
)      **2009 Opinion No. 34**
**v.**   )
)      **Filed: March 5, 2009**
**SETH HARRIS,**   )
)      **Stephen W. Kenyon, Clerk**
     **Defendant-Respondent.**   )
)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. D. Duff McKee, District Judge; Hon. Russell A. Comstock, Magistrate Judge.

The order of the district court affirming the trial court is <u>affirmed</u>.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

Weigt Law Offices, Chtd, Meridian, for respondent. Dennis C. Weigt argued.

_____

EISMANN, Chief Justice.

This is an appeal from an order reducing the payor's child support obligation to zero because he is incarcerated in the penitentiary and requiring that either party bring appropriate proceedings to increase the amount of child support upon the payor's release. The payee appealed both provisions. We hold that the payee cannot challenge the first provision because she did not oppose the child support reduction in the trial court and that she has not shown any abuse of discretion by the trial court in failing to order that the child support automatically revert to the prior level upon the payor's release from prison.

## I. FACTS AND PROCEDURAL HISTORY

Amber Mackowiak (Mackowiak) and Seth Harris (Harris) were divorced on January 24, 2005. Mackowiak was awarded primary physical custody of their two minor children, and Harris was ordered to pay child support in the sum of $500 per month. He was also ordered to

pay spousal maintenance, and the divorce decree provided that his monthly child support obligation would increase to $750 when his spousal maintenance obligation ended.

On November 17, 2005, Harris broke into the home of Mackowiak's boyfriend and future husband. Harris held the boyfriend at gunpoint for about twenty minutes, during which time Harris interrogated him about his intentions regarding Mackowiak. After Harris left, the boyfriend called the police. Harris was charged with and pled guilty to aggravated assault and burglary, both of which are felonies. He was sentenced to ten years in the custody of the Idaho Board of Correction, with three years fixed and seven years indeterminate.

On May 8, 2006, Harris filed a motion to abate his child support obligation until sixty days after his release from incarceration. An evidentiary hearing on that motion was scheduled on July 21, 2006. Mackowiak did not appear at the hearing, nor did she file anything objecting to the motion. Harris had family members present to testify as to his lack of financial resources, but the trial court told him they would be unnecessary. The court ruled that because the parties had previously stipulated that Harris was incarcerated and there was no evidence he had resources with which to pay child support, Harris's child support obligation would be set at zero until he is released from incarceration. On August 8, 2006, the court entered an order setting the child support at zero, requiring Harris to notify Mackowiak of his release from incarceration, and providing that either party could file a motion to modify child support upon his release.

On August 22, 2006, Mackowiak filed a motion to amend the order, objecting to the provision that either party would have to file a motion to set the amount of child support upon Harris's release from incarceration. Mackowiak's counsel stated that she did not oppose the child support being reduced to zero during Harris's incarceration. She only opposed having to redetermine the amount of child support once Harris was released from incarceration. The trial court responded that it had no idea what the parties' circumstances and resources would be once Harris was released, so that issue would have to be determined at that time. It denied the motion to amend the order regarding child support. Mackowiak then appealed to the district court.

Mackowiak argued to the district court that the trial court erred in reducing the child support because there was insufficient evidence of Harris's inability to pay and that his child support should not be reduced where his alleged inability to pay results from being incarcerated for a crime. Based upon the decision of the Idaho Court of Appeals in *Nab v. Nab*, 114 Idaho

2

512, 757 P.2d 1231 (Ct. App. 1988), the district court affirmed the trial court. Mackowiak then appealed to this Court.

## II. ISSUES ON APPEAL

1. Did the district court err in affirming the trial court's decision to reduce Harris's child support payments to zero because he was incarcerated in the penitentiary?

2. Did the district court err in affirming the trial court's decision not to have the original child support award automatically reinstated upon Harris's release from incarceration?

## III. ANALYSIS

"When reviewing a decision of the district court acting in its appellate capacity, the Supreme Court directly reviews the district court's decision." *Reisenauer v. State, Dept. of Transp.*, 145 Idaho 948, 949, 188 P.3d 890, 891 (2008).

### A. Did the District Court Err in Affirming the Trial Court's Decision to Reduce Harris's Child Support Payments to Zero Because He Was Incarcerated in the Penitentiary?

The amended judgment entered on January 24, 2005, ordered Harris to pay child support in the sum of $500 per month and to pay spousal support in the sum of $250 per month for thirty-six months.[1] The judgment also provided that when the spousal support terminated, the child support would increase automatically to $750 per month. As a result of his subsequent criminal conduct, Harris was sentenced to serve from three to ten years in prison. On May 8, 2006, Harris filed a motion asking the trial court "to abate child support until sixty (60) days from Defendant's release from the custody of the Idaho Department of Corrections."

"Under Idaho Code (I.C.) § 32-709, the child support provisions of a divorce decree may be modified if a substantial and material change of circumstances has occurred since the last divorce decree was entered."[2] *Rohr v. Rohr*, 128 Idaho 137, 141, 911 P.2d 133, 137 (1996). The

---

[1] The judgment provided that the spousal support would terminate if Mackowiak remarried, sold the community residence, or lost it through foreclosure.

[2] The first appellate decision in Idaho regarding the modification of the amount of child support was *Humbird v. Humbird*, 42 Idaho 29, 243 P. 827 (1926). The statute in effect at that time provided that when a divorce was granted for the offense of the husband, the court could "compel him to provide for the maintenance of the children . . . , and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively." *Id.* at 37, 243 P. at 829. The statute also provided that "the court may,

trial court determined that Harris's incarceration justified reducing his child support obligation to zero. Mackowiak has appealed that decision, arguing that the trial court abused its discretion in lowering Harris's child support obligation to zero during his incarceration. We will not address that issue because Mackowiak failed to oppose that modification of the amount of child support in the trial court.

"[I]t is well accepted that issues not argued before the trial court will not be considered when raised for the first time on appeal." *Farr v. Mischler*, 129 Idaho 201, 205, 923 P.2d 446, 450 (1996). We have held that a party's failure to object to action by the trial court precludes a party from challenging that action on appeal. In *Kirkman v. Stoker*, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000), Kirkman requested a jury trial in his complaint and amended complaint, but the trial court set the case for a court trial. Kirkman did not raise any objection. Eight months later during a conference, the trial court stated that it anticipated a two- to three-day court trial, and Kirkman's counsel responded, "What do you mean court, not a jury?" The trial court responded, "Court. It's been set for a court trial for a considerable period of time." Kirkman's counsel again did not raise any objection, either orally or in writing. When he attempted to raise the issue on appeal, this Court held, "Kirkman, by failing to object to the setting of a court trial, failed to bring the issue before the district court and thus did not properly preserve it for appeal." *Id*. In *Porter v. Board of Trustees, Preston School Dist. No. 201*, 141 Idaho 11, 105 P.3d 671 (2004), the trial court proposed a manner of calculating sick leave benefits wrongfully denied to part-time bus drivers by the school district. The school district did not object to that manner of calculating the lost benefits, but then sought to challenge it on appeal. Because the school district had not objected in the trial court, this Court refused to consider the issue on appeal.

In the instant case, Mackowiak did not oppose Harris's motion to reduce his child support obligation to zero. On May 8, 2006, Harris filed a motion to abate his child support obligation

---

from time to time, modify its orders in these respects." *Id*. Although not using the words, the *Humbird* Court apparently applied an abuse-of-discretion standard to the trial court's actions in increasing both spousal maintenance and child support based upon a substantial increase in the former husband's income. Later, in *Simpson v. Simpson*, 51 Idaho 99, 102, 4 P.2d 345, 346 (1931), the Court adopted the standard that the spousal maintenance and child support ordered in a divorce decree could be modified only "upon a showing of material, permanent, and substantial change in the circumstances and conditions of the parties." In 1980, the Idaho legislature enacted Idaho Code § 32-709, which provides that spousal maintenance or child support in a divorce decree can be modified "only upon a showing of a substantial and material change in circumstances." Ch. 378, § 8, 1980 Idaho Sess. Laws 961, 964. A showing that the change is also "permanent" is not required.

4

until sixty days after his incarceration ended. That motion was set for evidentiary hearing on July 21, 2006. Mackowiak did not appear at the hearing, nor did she file anything objecting to the motion. The trial court reduced Harris's child support obligation to zero, but also required that either party must file a motion to redetermine child support after Harris's incarceration ended. On August 22, 2006, Mackowiak filed a motion to amend the order. She did not seek amendment of that portion of the order reducing child support to zero. She only sought to amend that portion of the order requiring either party to file a motion to increase child support after Harris was released from incarceration. Her counsel's argument in support of the motion is as follows:

> MR. BAUER: Okay. Very well. The third issue that was raised in our motion to correct is the issue of the – on the child support.
> The original motion by the defendant in this case had sought an abatement until sixty days from the defendant's release from custody.
> The ruling – there isn't any question about the ruling that – because the court did state on the record that it would be abated to zero and that either party would then have to re-apply once he was released.
> *I guess my concern there is that the original request was for an abatement until a specific period, which would imply no need to re-apply but would reinstate the original support order after sixty days from his release, which was the request, which we did not oppose.*
> So my request is based upon – or my motion is based upon the inconsistency between the relief granted and what was pled. (Emphasis added.)

Mackowiak's counsel specifically stated that he and his client "did not oppose" the motion to abate child support until sixty days after Harris's release from incarceration. Because Mackowiak did not oppose the motion to abate child support, she cannot argue on appeal that the trial court erred in doing so by reducing the child support to zero.

**B. Did the District Court Err in Affirming the Trial Court's Decision Not to Have the Original Child Support Award Automatically Reinstated upon Harris's Release from Incarceration?**

In her motion to amend the order regarding child support, Mackowiak asked the trial court to have Harris's child support obligation automatically return to the prior level once Harris was released from incarceration. The trial court refused to do so. On appeal, Mackowiak argues that the trial court abused its discretion because it did not even consider automatically re-

instating the prior child support award upon Harris's release and felt constrained to require Mackowiak to file a motion to redetermine child support upon Harris's release. In her opening brief, Mackowiak argued as follows:

> While the Trial Court certainly has discretion to decline such an approach [automatic reinstatement of the prior order], there was simply no consideration given to the alterative [sic]. The ruling lacks any sign that the Court understood the boundaries of its discretion on this issue. The Court's ruling suggests that it felt constrained to require Amber, who will have labored by that time many years to support these children without any contribution from their father, to bear the legal burden of returning to court yet again. When a court has apparently misconstrued the boundaries of its discretion and fails to reach its conclusion through an exercise of reason, its decision is flawed and should be vacated, as in this instance.

Determination of whether a trial court abused its discretion involves a three-part test which asks whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp*., 139 Idaho 761, 765, 86 P.3d 475, 479 (2004). Mackowiak's argument that the trial court abused its discretion does not comport with the facts. When explaining why it would not order the automatic reinstatement of the prior order upon Harris's release from incarceration, the trial court stated as follows:

> But I wasn't going to build in, in this particular case, any assumptions about what his earning capacity would be and start a default child support amount. I have no idea what the parties' circumstances and resources will be when that day occurs. So I think it's incumbent upon the parties to move to modify when he's released and capable of working and make a showing of what he's earning or capable of earning at that time.

By its comments, the trial court obviously knew it had discretion to order automatic reinstatement of the prior order. It stated it would not do so "in this particular case." The court also acted within the boundaries of its discretion and consistently with legal standards. Harris will serve at least three and up to ten years in prison. Mackowiak has not pointed to any evidence in the record indicating what the circumstances and financial conditions of the parties are expected to be upon Harris's eventual release. The trial court reached its decision by the exercise of reason. Because of the absence of evidence, the court decided that either party

6

should move to modify the child support once Harris is released from prison when there would be evidence of Harris's income or earning capacity.[3]

## IV.  CONCLUSION

We affirm the order of the district court affirming the judgment of the trial court.  We award costs on appeal to respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.

---

[3] The trial court did not hold, nor do we, that Mackowiak could not move to modify the child support sooner if there was a substantial and material change in circumstances.