## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38111

TANNER MICKELSEN,                         )
                                          )
    Plaintiff-Appellant,    )
                                          )
v.                                        )    Coeur d'Alene May 2012 Term
                                          )
BROADWAY FORD, INC.,                      )    2012 Opinion No. 93
                                          )
    Defendant-Respondent,   )    Filed: June 15, 2012
                                          )
and                                       )    Stephen W. Kenyon, Clerk
                                          )
US BANK, N.A.; USB LEASING, LT,           )
                                          )
    Defendants.             )

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County.  Hon. Joel E. Tingey, District Judge.

District court order granting summary judgment, <u>affirmed.</u>

May, Rammell & Thompson, Chtd., Pocatello, for appellant.  Bron M. Rammell argued.

Nalder Law Office, P.C., Idaho Falls, for respondent.  G. Lance Nalder argued.

_____

BURDICK, Chief Justice

This case comes before this Court from the district court's grant of summary judgment against Tanner Mickelsen (Mickelsen) and for Broadway Ford, Inc. (Broadway Ford). Mickelsen, who had leased a truck from Broadway Ford, brought a complaint alleging fraud in the inducement and asking for rescission based on that fraud or, alternatively, on mutual mistake. The district court granted summary judgment to Broadway Ford, finding no genuine issue of material fact.  The decision of the district court is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2007, Mickelsen leased a Ford F-350 pickup truck from Broadway Ford in Idaho Falls, Idaho.  The truck had over 1,400 miles on it but was sold as new and under factory

1

warranty. The truck was also modified with a six-inch suspension lift and four over-sized tires. Mickelsen financed the lease through U.S. Bank.

Although he purchased the truck in Idaho Falls, Mickelsen resides in Moses Lake, Washington. In Moses Lake, Mickelsen took the truck to the local dealership, Discovery Ford, for repairs as needed. In the first year of the lease, Discovery Ford made several repairs to the vehicle under the factory warranty, which included replacing the radiator. According to Mickelsen, he experienced handling problems with the truck beginning in September 2008. He took the vehicle to Discovery Ford, where the service technician determined that there was a problem with the steering gear and drag link. Mickelsen was advised by the service manager that the repairs would not be covered by the warranty because of the lift modifications made to the truck's suspension. Laura Riley (Riley) was the Discovery Ford warranty administrator who determined that the necessary repairs for Mickelsen's truck were not covered under the Ford warranty.[1]

Eventually, Broadway Ford told Mickelsen that they would try to resolve the issue if he drove or shipped the truck back to Idaho Falls. Mickelsen did not take the truck back to Idaho Falls, and ultimately stopped making lease payments to U.S. Bank. Mickelsen voluntarily surrendered the vehicle to U.S. Bank in September 2009.

Mickelsen filed his initial complaint against Broadway Ford and U.S. Bank on October 28, 2009.[2] After the district court entered an order granting Broadway Ford's motion for a more definite statement under I.R.C.P. 12(e), Mickelsen filed an amended complaint on January 13, 2010. Among other things, the amended complaint alleged fraud in the inducement, mutual mistake, and prayed for rescission of the lease based on Broadway Ford's fraudulent behavior.

On May 10, 2010, Broadway Ford filed a motion for summary judgment and an accompanying memorandum. The district court heard argument on the motion for summary

---

[1] In an August 4, 2009 letter from Laura Riley to Mickelsen's initial counsel in this matter, Riley outlines Discovery Ford's denial of warranty coverage.

> As warranty administrator, it is my responsibility to determine the warrantability of repairs at this dealership. On September 29, 2008, Tanner Mickelsen brought his 2008 Ford F-350 to our dealership for a steering concern. Our technician inspected the vehicle and determined that the drag link and steering gear was [sic] worn due to the lift that had been installed on the vehicle.
> Because the lift is a modification to the original configuration of the vehicle and was determined to be the root cause of the concern, the repair is not covered by the bumper-to-bumper warranty. The bumper-to-bumper warranty only covers repairs that are due to a defect in factory-supplied materials or workmanship.

[2] U.S. Bank and Mickelsen settled in mediation on July 21, 2010.

2

judgment on July 23, 2010. On August 13, 2010, the district court entered a memorandum decision granting summary judgment to Broadway Ford. On the issue of fraud, the district court found that the alleged misrepresentation regarding the warranty on the after-market parts was not material. On the issue of mutual mistake, the district court held that there was no mistake, but at the very least any mistake was not "so fundamental to the transaction as to allow rescission." A final judgment was entered on September 1, 2010, and an amended judgment was filed on October 15, 2010.

Mickelsen timely filed a Notice of Appeal to this Court on September 24, 2010, an amended Notice of Appeal on October 14, 2010, and a second amended Notice of Appeal on February 4, 2011.

## II. STANDARD OF REVIEW

> When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the motion. Summary judgment is appropriate if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party.

*Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Electric*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, __, 272 P.3d 1263, 1268 (2012). "This Court exercises free review over questions of law." *Fuller*, 150 Idaho at 851, 252 P.3d at 1269.

## III. ANALYSIS

**A. The district court did not err in granting summary judgment for Broadway Ford on the claim of fraud in the inducement.**

In his amended complaint, Mickelsen brought a claim for fraud in the inducement under I.C. §§ 28-12-101 to -532, Idaho's codification of the Uniform Commercial Code (UCC) for leases. However, in its memorandum decision, the district court analyzed Mickelsen's claim under the common law standard of fraud in the inducement.

1. <u>The proper analysis of this claim is under the statutory provisions of the UCC, not the common law elements of fraud.</u>

In the context of goods covered under the UCC, the common law remedy of fraud is abrogated by the provisions of the UCC. "Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law." *McCann v. McCann*, No. 37547, 2012 WL 798581, at *8 (Idaho Mar. 13, 2012) (quoting *Baker v. Ore–Ida Foods, Inc.,* 95 Idaho 575, 583, 513 P.2d 627, 635 (1973)). As a general principle, "the rules of common law are not to be changed by doubtful implication. However, where the implication is obvious it cannot be ignored." *Statewide Constr., Inc. v. Pietri,* 150 Idaho 423, 429, 247 P.3d 650, 656 (2011) (*abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011)) (internal citations and quotations omitted).

Idaho Code section 28-1-103(b) states that:

> Unless displaced by the particular provisions of the uniform commercial code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

Although there is no explicit abrogation of the common law in the statute, Title 28, chapter 12 contains the "[r]ights and remedies for material misrepresentation or fraud . . . ." I.C. § 28-12-505(4). It is clear that the UCC is meant to displace the common actions for fraud or material misrepresentation in leases that fall under the purview of this chapter. *But see* I.C. § 28-12-505 ("Neither rescission nor a claim for rescission of the lease contract nor rejection or return of the goods may bar or be deemed inconsistent with a claim for damages or other right or remedy.").

Additionally, the UCC is a codification of the equitable remedy of rescission, which changes rescission in this context from an equitable remedy into a legal remedy. "It is well established in Idaho that equitable claims will not be considered when an adequate legal remedy is available." *McCann v. McCann*, No. 37547, 2012 WL 798581, *8 (Idaho Mar. 13, 2012) (quoting *Iron Eagle Dev., LLC v. Quality Design Systems, Inc.,* 138 Idaho 487, 492, 65 P.3d 509, 514 (2003)).

2. Broadway Ford is entitled to summary judgment under the UCC.

Although the district court's decision did not address this issue under the UCC, Mickelsen argued this issue in his amended complaint and in his briefing on appeal. Since this Court exercises free review over questions of law, it is possible to analyze Mickelsen's claim

4

under the UCC even if the district court used a different analysis. *See Fuller*, 150 Idaho at 851, 252 P.3d at 1269.

In his amended complaint Mickelsen specifies rescission as his remedy, but in his brief on appeal he uses the phrase revocation of acceptance. "However, it has been held, and the commentators agree, that rescission and revocation of acceptance amount to the same thing under the Uniform Commercial Code, particularly since cancellation is a remedy available to a buyer who has established justifiable grounds for revocation of acceptance." *Peckham v. Larsen Chevrolet-Buick-Oldsmobile, Inc.*, 99 Idaho 675, 677, 587 P.2d 816, 818 (1978).

Idaho Code section 28-12-517(1) allows a lessee to "revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the lessee if the lessee has accepted it." Idaho Code section 28-12-517(4) states that "[r]evocation of acceptance must occur within a reasonable time after the lessee discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by the nonconformity. Revocation is not effective until the lessee notifies the lessor."

In the official comments to I.C. § 28-12-101, the UCC's national drafting committee concluded that article 2 of the UCC, codified in Title 28 chapter 2 of the Idaho Code, is the appropriate statutory analog for the chapter on leases, chapter 12. This Court has interpreted these analogous provisions in *Griffith v. Latham Motors, Inc.*:

> [T]o revoke acceptance, the goods must have a nonconformity that substantially impairs the value of the goods to the buyer. This is a subjective test. . . . [T]o decide if the value of goods has been substantially impaired, a court must make a two-step determination. First, the court must determine the purpose for which the buyer purchased the goods. Second, the court must determine whether the nonconformity substantially impaired the buyer's ability to use the goods for the purpose intended.

128 Idaho 356, 361, 913 P.2d 572, 577 (1996). The truck satisfies the definition for "goods" in I.C. § 28-12-103 which states that:

> 'Goods' means all things that are movable at the time of identification to the lease contract . . . but the term does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals or the like, including oil and gas, before extraction. The term also includes the unborn young of animals.

*a. Whether the value of the truck was substantially impaired.*

According to Mickelsen, his right to revoke is based on "whether the warranty had been invalidated by the addition of the after-market parts." This invalidation, he argues, would cause

the nonconformity in the good. While it is Mickelsen's assertion that the warranty was invalidated by the after-market parts, any issue with the warranty would not be a basis for revocation based upon nonconformity of the good in this case.

The holding in *Griffith* provides some guidance on whether issues of warranty can substantially impair the value of a good: "Whether an express or implied warranty has been breached is included in the revocation determination only in the sense that a breach of a warranty could substantially impair the value of the goods to the buyer." 128 Idaho at 361, 913 P.2d at 577. Breach of warranty is a form of nonconformity that can be the basis of revocation. *See Ford Motor Credit Co. v. Harper*, 671 F.2d 1117, 1122 (8th Cir. 1982). However, Mickelsen expressly states in his reply brief that he does not claim a breach of warranty: "This action is one for fraud, not breach of warranty."

At summary judgment, when reasonable minds can come to but one conclusion on an issue of fact, a judge may decide the issue as a matter of law. *See Hayes v. Union Pacific R. Co.*, 143 Idaho 204, 208, 141 P.3d 1073, 1077 (2006). Mickelsen has not presented any evidence that the good itself had a nonconformity that substantially impaired its value to Mickelsen. Additionally, Mickelsen did not bring a breach of warranty claim. Therefore, we find Mickelsen's use of the truck was not substantially impaired by any misrepresentation by Broadway Ford. The decision of the district court is affirmed on alternate grounds.

**B. The district court did not err in granting summary judgment to Broadway Ford on the claim of mutual mistake.**

In the alternative, Mickelsen argues that "if the court were to find that there was no knowing misrepresentation, [Mickelsen] would be able to show that both parties were ignorant of the lack of a bumper-to-bumper warranty and, by way of mutual mistake, obtain the equitable relief of rescission." In response, Broadway Ford argues that there was no mutual mistake, and that Broadway Ford has never been mistaken as to the existence of a bumper-to-bumper warranty covering Mickelsen's leased truck. If any mistake was made, Broadway Ford contends that it was a unilateral mistake by Mickelsen.

"A mutual mistake occurs when both parties, at the time of contracting, share a misconception regarding a basic assumption or vital fact upon which the bargain is based." *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997). "What the parties actually intended is a question of fact." *Hughes v. Fisher*, 142 Idaho 474, 482, 129 P.3d 1223, 1231 (2006). "Whether a mutual mistake of fact exists is a finding of fact and will not be overturned unless it is clearly

6

erroneous." *O'Connor v. Harger Const., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008). "The mistake must be common to both parties, and must be proven by clear and convincing evidence." *Id*. "Mutual mistake permits a party to rescind or modify a contract as long as the mistake is so substantial and fundamental as to defeat the object of that party." *Id*. (quoting *Primary Health Network, Inc. v. State, Dep't of Admin.,* 137 Idaho 663, 668, 52 P.3d 307, 312 (2002)).

The district court's memorandum decision stated that Mickelsen "failed to present any evidence that the Vehicle, excluding the after-market parts, was not covered by a factory warranty" and that "the record does not support an allegation that Defendant Broadway Ford mistakenly believed that the after-market parts were covered by the factory warranty." Additionally, the district court held that "the alleged mistake must be substantial and fundamental to the purpose of the contract" but that Mickelsen's mistake regarding the after-market parts "had no material effect on the Vehicle and the subject transaction." The district court concluded that there "was no mutual mistake and even assuming mutual mistake, the mistake was not so fundamental to the transaction as to allow for rescission."

In his brief, Mickelsen argues that the evidence shows a genuine issue of material fact that Broadway Ford "knowingly misrepresented that the truck had a bumper-to-bumper warranty, but also that, at the very least, both parties were mistaken as to the existence of a factory bumper-to-bumper warranty until such was discovered by Discovery Ford . . . ." In response, Broadway Ford argues that there "was a valid warranty on the vehicle which has not been voided by installation of the lift or other non-Ford part."

In support of his argument, Mickelsen cites a discussion on the nature of the truck's warranty from the June 22, 2010 deposition of Mont Crnkovich (Crnkovich), the owner of Broadway Ford:

> Q. [The truck] was represented as having a full factory bumper-to-bumper warranty?
> A. Correct.

Later in the deposition, Crnkovich mentioned the warranty status of the after-market parts:

> Q. Do you agree . . . that neither the tires nor the lift would be covered by Ford Manufacturing's warranty?
> A. No. They would not be covered by them.
> Q. They would not be covered by the warranty?
> A. Yeah. Excuse me.
> Q. And what would Tanner have had to do if the lift or tires failed?

A. If the lift or tires failed, he'd have to take it to Big O [Tires].

. . .

Q. You do agree that Ford Manufacturing won't cover parts that are not Ford parts.

A. Right.

In his June 18, 2010 deposition, Randy Cate, a master mechanic at Broadway Ford, agreed that "the bumper to bumper warranty only covers repairs that are due to a defect in factory supplied materials or workmanship."

Mickelsen states in his April 8, 2010 deposition that he knew that the truck had aftermarket parts before he signed the lease:

Q. Did you know at the time that you took possession of this truck that it had aftermarket parts?

A. Yes.

Q. What did you understand those aftermarket parts to be at the time you took possession of them?

A. The suspension lift.

Q. Anything else?

A. No. Broadway Ford stated it was still under warranty.

At the time of purchase, Mickelsen had been told by representatives of Broadway Ford that some of the parts on the vehicle were not Ford parts. Broadway Ford knew that the after-market parts were not Ford parts. Broadway Ford employees have also stated that non-Ford parts are not covered under the Ford factory warranty.

In terms of mistake, the record indicates that Mickelsen is the only party that believed that the non-Ford parts were covered by the Ford factory warranty. Since reasonable minds can come to but one conclusion on this issue of fact, we affirm the decision of the district court, as any mistake was unilateral and not common to both parties.

**C. Mickelsen is precluded from raising, for the first time on appeal, the issue of whether the district court abused its discretion in striking affidavits or depositions from the record.**

On July 16, 2010, Broadway Ford filed a Motion to Strike Affidavit of Tanner Mickelsen. In its memorandum decision and order, the district court held that Broadway Ford's "motion to strike is granted inasmuch as the hearsay statements proffered by plaintiff are inadmissible and will not be considered." More specifically, "[a]ffidavit and deposition testimony of Plaintiff or others as to what they were told by Discovery Ford personnel is inadmissible hearsay and will not be considered."

8

In response, Broadway Ford argues that Mickelsen is precluded from raising this issue on appeal since Mickelsen neither filed a motion in opposition nor discussed the motion at the July 23, 2010 hearing on Broadway Ford's Motion for Summary Judgment.

"This Court's longstanding rule is that it will not consider issues raised for the first time on appeal." *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 752, 101 P.3d 690, 696 (2004). An examination of the record reveals no indication that Mickelsen filed a motion in opposition to Broadway Ford's Motion to Strike. Additionally, the transcript from the hearing on various motions does not contain any argument from Mickelsen in regard to the Motion to Strike, even though the district court instructed the parties to include argument relating to that motion. Since Mickelsen has not shown that he opposed the motion to strike, he cannot argue on appeal that the district court erred in granting the motion. *Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009).

**D. Neither party is entitled to attorney fees on appeal.**

Mickelsen argues that the underlying action is based on the purchase or sale of goods, entitling him to attorney fees on appeal under I.A.R. 41 and I.C. § 12-120(3). Broadway Ford requests attorney fees on the same grounds and under I.C. § 12-120(1).

Idaho Code section 12-120(1) states that "in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees." For the statute to apply, the pleading must specifically allege that the amount pleaded does not exceed $25,000. *Cox v. Mueller*, 125 Idaho 734, 737, 874 P.2d 545, 548 (1994). Mickelsen's amended complaint prays for, among other things, *both* "[d]amages not in excess of $25,000" and "[r]escission of the lease." Rescission of the lease would result in cancelation of a debt owing on the lease and therefore must be included in the amount pleaded. *See Chavez v. Barrus*, 146 Idaho 212, 224, 192 P.3d 1036, 1048 (2008) (where complaint sought $21,500 plus one-half interest in real property, it did not comply with I.C. § 12-120(1)). Since Mickelsen did not specifically allege that the total of the amount owing on the lease and the damages was $25,000 or less, the amended complaint did not specifically state that the total recovery sought was $25,000 or less. Therefore I.C. § 12-120(1) is not applicable.

Idaho Code section 12-120(3) states that "[i]n any civil action to recover on . . . any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a

9

reasonable attorney's fee to be set by the court . . . ."  The statute defines commercial transactions as "all transactions except transactions for personal or household purposes." *Id*.  The attorney fee provisions of I.C. § 12–120 also govern on appeal.  *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc*., 141 Idaho 716, 721, 117 P.3d 130, 135 (2005).  The truck lease at the heart of this action was for personal use and not for any commercial purpose.  Therefore, I.C. § 12-120(3) is not applicable.

### IV. CONCLUSION

We find that the district court did not err in granting summary judgment for Broadway Ford on the claim of fraud in the inducement, as any misrepresentation by Broadway Ford did not substantially impair the value of the truck.  On this point we affirm the decision of the district court on alternate grounds.  We find that the district did not err in granting summary judgment to Broadway Ford on the claim of mutual mistake.  We also decline to consider the issue of whether the district court abused its discretion by granting Broadway Ford's Motion to Strike, as it is raised for the first time on appeal.

Neither party is awarded attorney fees on appeal, as the transaction at issue is not a commercial transaction as defined in I.C. § 12-120(3).  Costs to Broadway Ford.

Justices EISMANN, W. JONES and HORTON, **CONCUR.**

J. JONES, Justice, specially concurring.

I concur in the Court's Opinion but wish to briefly comment about the advisability of trying to work things out in a common sense fashion, before resorting to litigation. At the time Mr. Mickelsen experienced the steering problem with the truck, he was 13 months into the lease and had driven the vehicle 26,522 miles. He knew that the lift kit and tires were not manufactured by Ford Motor Company. Many people would have been aware of a potential warranty problem under those circumstances and a careful reading of the factory warranty would have confirmed the coverage problem. Discovery Ford advised him that the repair, which it attributed, rightly or wrongly, to the non-Ford parts, was not a covered "repair," not that the factory warranty was voided. The cost of the repair was $1,264.65, which he could have paid and then disputed with Discovery Ford and Ford Motor Company.[3] Broadway Ford advised Mr.

---

[3] Discovery Ford acquired the truck from the bank after repossession and sold it to another customer. When that customer brought it in for steering problems, the same repair was covered under the factory warranty. It is not clear from the record why Discovery Ford submitted the warranty claim to Ford Motor Company for its own customer or

Mickelsen that it would try to resolve the issue, if he would drive or ship the truck back to Idaho Falls, but he declined to do so. It would seem that from the standpoint of practicality, either alternative would have been substantially more productive than ceasing to make lease payments, allowing the truck to be repossessed by the bank, and having to deal with the issues of a default. The resort to litigation to seek vindication has been, to say the least, rather counterproductive. In a situation like this, a first resort would best be made to common sense, rather than to lengthy and costly litigation.

---

whether Ford Motor Company was advised by Discovery Ford of its denial of coverage for Mr. Mickelsen's claim. It seems that Discovery Ford has some explaining to do but that is beyond the scope of this case.