# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40061

| | | |
|---|---|---|
| NORMAN RILEY and ROBIN RILEY, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Pocatello, August 2013 Term |
| v. | ) ) ) | 2013 Opinion No. 120 |
| SPIRAL BUTTE DEVELOPMENT, LLC, an Oregon limited liability company and JIM HORKLEY, an individual | ) ) ) ) | Filed: November 26, 2013 |
| Defendants-Respondents, | ) ) | Stephen Kenyon, Clerk |
| and | ) ) | |
| DOES I-V, | ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Hon. Darren B. Simpson, District Judge.

The judgment of the district court is affirmed.

Thomsen Stephens Law Offices, Idaho Falls, for appellants. Michael Joseph Whyte argued.

Swafford Law Office, Idaho Falls, for respondents. Ronald L. Swafford argued.

_____

HORTON, Justice.

This is an appeal from the district court's grant of summary judgment in favor of respondents, Spiral Butte Development, LLC and Jim Horkley (collectively "Spiral Butte"). Norman and Robin Riley initiated this action against Spiral Butte for breach of contract and sought specific performance of the parties' Lease Option Agreement. The district court granted Spiral Butte's motion for summary judgment and the Rileys timely appealed. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2001, the Rileys filed for bankruptcy. As part of the Rileys' bankruptcy reorganization, a parcel of their real property known as the "Howe property" was deeded to W.R. Holdings. In order to redeem the Howe property, the Rileys and Horkley made an arrangement whereby Horkley would redeem the property on behalf of the Rileys and then lease the property back to the Rileys for commercial farming purposes.

On October 25, 2002, the Rileys and Horkley executed a Real Estate Purchase Agreement whereby Horkley purchased the Howe property from the Rileys for $950,000.00. Horkley then transferred the property to Spiral Butte Development, LLC.[1] On that date, Spiral Butte and the Rileys also executed a Lease Option Agreement (Agreement).[2] The Agreement provided that the Rileys would lease the Howe property from November 1, 2002, through December 31, 2007, for $102,500.00 per year. Specifically, the Rileys were to pay Spiral Butte $51,225.00 biannually on June 20 and December 20. The first payment was due on June 20, 2002.

In addition to the biannual rent payments, the Agreement included many other obligations that the Rileys agreed to perform. First, section four of the Agreement required the Rileys to "pay for all electricity, water, and all payments on any equipment" located on the Howe property. Additionally, the Rileys were to "pay as additional rent the cost of liability insurance and casualty insurance" as well as "all expenses of maintenance, operation and repair of the subject premises and the equipment thereon." Second, section five made the Rileys responsible for "all taxes and assessments on the real estate". Third, section eleven required the Rileys "to maintain, keep in effect, furnish, and deliver to the Lessor liability insurance policies." Lastly, section six of the Agreement required the Rileys to "regularly occupy and use the [Howe property] for the conduct of the [the Rileys] business," and further stated that the Rileys "shall not abandon or vacate the premises for more than ten (10) days without prior written approval of Lessor."

Notwithstanding the Rileys' obligations under the Agreement, at his deposition, N. Riley stated that the Rileys did not: (1) make any rent payments on the property; (2) purchase

---

[1] Horkley was "a member, manager and/or agent of Spiral Butte Development LLC., and was acting on its behalf when dealing with [the Rileys]."

[2] The Agreement characterized the lease as a "triple net lease." A "triple net lease," also known as a "net net net lease," is "[a] lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims." BLACK'S LAW DICTIONARY 972 (9th ed. 2009).

insurance; (3) pay electrical bills; or (4) pay any taxes on the Howe property. Additionally, N. Riley testified that the Rileys made no payments towards maintenance, operating costs, or repair costs throughout the term of the Agreement. Furthermore, the Rileys never occupied the Howe property or used it in the conduct of their business.

Other relevant sections of the Agreement include sections nine and twenty-nine. Section nine, titled Right of Assignment, provided that the Rileys could not pledge, hypothecate or surrender the lease, or any interest in the lease without Spiral Butte's written consent first being obtained in writing. Section twenty-nine, titled Option to Purchase, granted the Rileys the exclusive right to purchase the Howe property, it provides:

> It shall be a condition of the valid exercise of this option that, at the time such option is exercised, the Lease shall be in full force and effect and Lessees shall not be in default thereunder. Unless timely and validly exercised, this option shall expire at 11:59 p.m. on December 20, 2007 ("Expiration Date"); provided, however, that if the Lease shall be earlier terminated by reason of the Lessees default thereunder, then this option shall expire upon such termination.

Lastly, the Agreement included a merger clause, which provided that the Agreement "contains the entire understanding and agreement between the parties hereto and may be modified or amended in whole or in part, only by a writing executed by each of the parties herein."

Despite the express terms of the parties' Agreement, N. Riley contends that he and Horkley entered into an oral sublease whereby a third party, the Jensens, would run the farming operations on the Howe property. At his deposition, N. Riley testified that he orally agreed with Horkley and the Jensens that the Jensens would pay $200.00 per acre of land they farmed and that the Rileys would not be responsible for any payments.

Not surprisingly, Horkley had a much different story to tell. According to Horkley, he and Riley, prior to the sale of the Howe property and the execution the Agreement, mutually decided that the Jensens would farm the Howe property because the Rileys were unable to do so because of the loss of their farming equipment in bankruptcy. Horkley testified that the parties orally agreed that the Jensens would pay approximately $79,000.00 toward the $102,500.00 rent required by the Agreement and that the Rileys would make up the difference and be responsible for all other payments and expenses on the property. Horkley testified that he repeatedly asked for money from the Rileys in order to take care of costs on the Howe property but that the Rileys

either ignored his requests completely, or acknowledged the requests and failed to make any payments.

Neither of the parties' versions is corroborated by Mark Jensen's[3] deposition testimony. According to Jensen, he and Horkley agreed that the Jensens would pay Horkley $170.00 per acre of land that they farmed on the Howe property. This agreement, according to Jensen, was made orally between him and Horkley sometime in 2003. The Jensens did not pay any money to Horkley for their use of the property until January 13, 2004. Notably, the record is completely silent as to whether the parties ever discussed the Rileys' option to purchase the property at any point following the execution of the Agreement.

On December 11, 2007, the Rileys informed Spiral Butte of their intent to purchase the Howe property. In response, Spiral Butte, through counsel, declined to honor the Agreement's option provision stating, "it is our position that Riley's [sic] abandoned any right they might have had under the written agreement by failing to perform any function related to the lease."

Thereafter, on February 28, 2008, the Rileys filed their complaint alleging that Horkley breached the Agreement by refusing to honor the option. The Rileys sought specific performance of the Agreement's option provision. Spiral Butte filed its answer on March 21, 2008, and asserted that the Rileys failed to state a claim upon which relief could be granted and were barred from making their claim because they had previously breached the Agreement. On February 17, 2012, Spiral Butte filed a motion for summary judgment, arguing that summary judgment was warranted because it was undisputed that the Rileys had defaulted on numerous provisions in the Agreement, stripping them of their right to exercise the option. The district court granted Spiral Butte's motion and issued its Order Granting Defendants' Motion for Summary Judgment on April 23, 2012. On the same day, the district court entered its final judgment in the case. The Rileys timely appealed.

## II. STANDARD OF REVIEW

In reviewing a grant of summary judgment, this Court employs the same standard as the district court. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[3] Mark Jensen is a member of Jensen Brothers Farms, the outfit that ultimately farmed the Howe property during the lease term.

4

to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 152, 280 P.3d 176, 179 (2012). "'However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact.'" *Id.* (quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012)).

## III. ANALYSIS

### A. The district court did not err in granting Spiral Butte's motion for summary judgment.

Based on the express terms of the parties' Agreement, the district court found that:

> The Rileys were responsible for all electricity, water, and all payments on any equipment; liability, fire, and casualty insurance; all expenses of maintenance, operation and repair of the Howe property and equipment thereon; all taxes and assessments on the Howe property, improvements and equipment, and all taxes and water assessments upon any person property located on the Howe property.

Further, the district court found that, "[b]ased upon the evidence in the record, the Rileys have not shown that they abided by the terms of the agreement such that they were eligible to repurchase the Howe property under the terms of Section 29." Because the Rileys conceded that they did not perform all of the required obligations under the Agreement and essentially set the parties' written Agreement aside, the district court concluded that they failed to raise a genuine issue of material fact that they were entitled to exercise their option and granted summary judgment in favor of Spiral Butte.

On appeal, the Rileys argue that a material issue of fact exists because, "the parties agreed the Jensens would take over the farm operation until the Rileys were able to. This included payments." The Rileys contend that when the Jensens orally agreed to farm the Howe property they also took on every obligation the Rileys originally undertook in the Agreement, but that the Rileys maintained their right to exercise the option.

In response, Spiral Butte argues that no genuine issue of material fact is in dispute. Spiral Butte contends that there is nothing in the record to show the precise terms regarding the Jensens' use of the Howe Property. And, as a result, Spiral Butte argues that no evidence exists to support the Rileys' position that Spiral Butte's oral agreement with the Jensens was a "full and complete assignment" of the original Agreement.

5

"When interpreting a contract, this Court begins with the document's language." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001).

Neither party at any point in this litigation has alleged that the Agreement is ambiguous in any way, nor does it appear to be. Thus, the plain language of the Agreement will govern the conduct of the parties in this case.

Here, the express terms of the parties' Agreement provided that it was a lease agreement with an option to purchase. The document itself was titled, Lease Option Agreement. Additionally, paragraph twenty-nine of the Agreement titled, Grant of Option and Term provided:

> Lessor grants Lessees the exclusive right and option to purchase the [Howe property] which includes the real property, growing crops, buildings and fixtures and equipment.
> ….
>
> This option shall be exercised, if at all, exclusively by the Lessees or their heirs or assigns, by giving written notice of such exercise to the Lessor after one year from the date of purchase of the Premises by the Lessor. It shall be a condition of the valid exercise of this option that, at the time such option is exercised, the Lease shall be in full force and effect and the Lessees shall not be in default thereunder. Unless timely and validly exercised, this option shall expire at 11:59 p.m. on December 20, 2007 ("Expiration Date"); provided, however, that if the Lease shall be earlier terminated by reason of the Lessees default thereunder, then this option shall expire upon such termination.

The plain language of paragraph twenty-nine provided three conditions in order for the Rileys to validly exercise their option. First, the lease was required to be in "full force and effect." Second, the Rileys could not be in default under the Agreement. Third, the option had to be exercised before December 20, 2007.

The district court focused on the conditions found in section twenty-nine in granting Spiral Butte's motion for summary judgment. The Court noted that the Rileys failed to "abide[] by the terms of the agreement" and accordingly found that they were not entitled to exercise the option. Specifically, the district court found that the Rileys did not: (1) make any rental payments; (2) purchase insurance; (3) pay taxes on the property; (4) pay any electrical bills; and,

6

(5) did not pay for any maintenance or repairs for any equipment. Based on the district court's express findings and the record before this Court we find that the Agreement was not in "full force and effect" and that the Rileys were in default when the they attempted to exercise the Agreement's option provision.

### 1. The agreement was not in full force and effect.

We have not defined or discussed what precisely "full force and effect" means with respect to the performance of contractual terms. However, "force and effect" is defined as "[l]egal efficacy." Black's Law Dictionary 718 (9th ed. 2009). Further, a contract is in "full force and effect" where no portions of the contract terms have been "vitiated in any way." P.S. Atiyah, *An Introduction to the Law of Contract* 36 (3d ed. 1981). A contract term is "vitiated" where it is impaired, or caused to have no effect. Black's Law Dictionary 1708 (9th ed. 2009). Thus, for the Agreement to be in "full force and effect" all of its provisions must be properly complied with and not impaired in any way.

In this case, the parties' Agreement was not in "full force and effect" when the Rileys attempted to exercise the option because many of the Agreement's provisions were not being complied with or given any effect, i.e. they were vitiated.

Furthermore, as a "triple net lease," the general purpose of the parties' Agreement was for the Rileys to farm the Howe property, pay rent and all the expenses on the property until they could exercise their option, and leave Spiral Butte with "an amount free of all claims." *See* 49 Am. Jur. 2d Landlord and Tenant § 716 ("a 'net net net lease' typically requires a lessee to pay a monthly lump sum for rental, in addition to holding the lessee responsible for all other costs and expenses arising from the property, including taxes and insurance.").

The triple net lease essentially makes the lessee solely responsible for the payment and care of the leased property, as if the lessee owned the property outright. By intentionally drafting a triple net lease, teamed with the fact that Spiral Butte redeemed the Howe property on behalf of the Rileys, it is clear that the parties' contemplated that the Rileys would pay for, insure, and maintain the Howe property under the Agreement. However, the Rileys never made a single rent payment or any payments related to the costs and expenses of the property. Furthermore, the Rileys never farmed the property; they never even occupied the property as required by section

7

six of the Agreement.[4] Nor did the Rileys seek out the Jensens as potential sublessees, rather it was Horkley who decided that the Jensens would farm the property during the period of the Rileys' triple net lease.

Even construing every unsupported factual assertion in favor of the Rileys and accepting their version of the alleged oral sublease—whereby the Jensens were to perform every obligation under the agreement—the record indicates that after the Agreement was signed and Spiral Butte learned of the Rileys' inability to farm the property, the Agreement was cast aside and Spiral Butte sought out other lessees to ensure the property generated some revenue. Accordingly, the Agreement was not in "full force and effect" when the Rileys sought to exercise the option and, as a result, they were not entitled to exercise the option under the Agreement's plain language. The Rileys have not identified any evidence suggesting an oral agreement to modify the terms of the option. Thus, the district court properly dismissed the Rileys' case seeking specific performance of the option.

## 2. The district court's discussion of the statute of frauds is irrelevant.

In the district court's order granting Spiral Butte's motion for summary judgment, the court stated:

> In defense of their failure to pay the required annual rental fee, the Rileys raise the oral lease agreement between Horkley and Jensen. According to Mr. Riley, the oral lease was for a period of five (5) years, or until the Rileys were able to redeem the Howe Property. Without a writing, the Idaho statute of frauds renders the oral lease agreement unenforceable.

Furthermore, the district court found that the facts did not demonstrate the existence of an exception to the statute of frauds' writing requirement. The district court specifically addressed two exceptions to the statute of frauds' writing requirement–mutual acknowledgement and partial performance.

On appeal, the Rileys argue that the district court erred in determining that the oral agreement Spiral Butte and the Rileys entered into with the Jensens did not survive the statute of frauds. The Rileys contend that the district court erred by focusing on the oral agreement between Spiral Butte and the Jensens when it should have been considering the oral agreement between Spiral Butte and the Rileys. The Rileys assert that if the court had properly focused on

---

[4] Section six provides: "[t]he Lessee shall regularly occupy and use the demised premises for the conduct of Lessee' business, and shall not abandon or vacate the premises for more than ten (10) days without prior written notice." No written consent was ever given by Spiral Butte to allow the Rileys to permanently vacate the Howe property.

the agreement between Spiral Butte and the Rileys it would have found that their oral agreement was either a separate oral agreement or an oral modification.

In response, Spiral Butte argues that the district court properly held that the Rileys could not enforce the oral agreement between Spiral Butte and the Jensens. Horkley contends that the Rileys' part performance argument lacks merit in this case because the Rileys are seeking to enforce the option provision from the written Agreement, not the oral lease agreement between Spiral Butte and the Jensens. Additionally, Spiral Butte argues that the Rileys' modification argument lacks merit because the Agreement required that any modifications be in writing, and the Rileys have failed to produce any writing modifying the written Agreement.

The district court's discussion of the statute of frauds is irrelevant to the merits of this case because even if the oral lease agreement between the Rileys, Spiral Butte, and the Jensens was enforceable by the Rileys, there is simply no evidence that the initial written Agreement was in "full force and effect" when the Rileys sought to exercise their option, as discussed above.

## B. Attorney fees and costs are awarded to Spiral Butte.

Spiral Butte is entitled to attorney fees and costs on appeal under section twenty-four of the parties' Agreement. Section twenty-four, titled Litigation, provides:

> Should any suit be instituted by Lessor or Lessees to enforce any term or covenant of this … Agreement, on the part of the other to be performed, the prevailing party in such suit shall be entitled to receive from the losing party a reasonable attorney's fee and costs in such action incurred, such amount to be determined and fixed by the Court.

This suit was initiated by the Rileys to enforce the Agreement's option provision. Because this Court affirms the district court's grant of summary judgment in favor of Spiral Butte, it is the prevailing party. Accordingly, Spiral Butte is entitled to attorney fees and costs on appeal.

## IV. CONCLUSION

The district court's judgment is affirmed. Spiral Butte is awarded attorney fees and costs on appeal.


Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

9